508 So.2d 459 (1987)
UNITED ENGINES, INC., Appellant,
v.
DEPARTMENT OF REVENUE, State of Florida, Appellee.
No. BI-202.
District Court of Appeal of Florida, First District.
June 1, 1987.
*460 Arthur J. England, Jr., of Fine, Jacobson, Schwartz, Nash, Block & England, P.A., Miami, for appellant.
William Townsend, Gen. Counsel, Dept. of Revenue, Stephen J. Keller, Asst. Gen. Counsel, Dept. of Revenue, and Edwin A. Bayo, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
This is an appeal from final agency action of the Department of Revenue (Department), assessing a use tax and penalty against the appellant, United Engines, Inc. (United). We agree with the Department that the assessment was correct, and affirm.
In 1981, United, a Delaware corporation, entered into a joint venture with Broward Marine, Inc. of Fort Lauderdale, Florida for the construction of a prototype vessel with three marine engines instead of the traditional two. The purpose of the 92-foot prototype vessel, the "Jervet," was allegedly to travel to boat shows throughout the world in order to display United's new technology. (One of United's principal activities is the fabrication and sale of diesel marine engines.) The construction of the "Jervet" in Fort Lauderdale ran from April 1, 1981, through April 7, 1983. The "Jervet" was then moved to Pier 66 in Fort Lauderdale for installation of its interior. That work was completed on May 8, 1983, on which date the "Jervet" departed from Florida and set sail for northern waters.
At that time, United filed, as purchaser, an "Affidavit for Exemption of Boat Sold From Removal From the State of Florida by the Purchaser" in order to claim an exemption under section 212.05(1)(a)2, Florida Statutes (1983) from the 5% Florida sales tax on the purchase of the boat. According to section 212.05(1)(a)2,[1] a sales tax *461 exemption applies where a vessel departs Florida waters within ten days after its purchase or the completion of repairs, and where the purchasers comply with the listed requirements of the statute. The statute also provides that if the purchaser either fails to remove the boat from the state within ten days or permits the boat to return to the state within six months after the date of departure, the purchaser shall be liable for a use tax on the cost of the boat and a 100% penalty.
The "Jervet" returned to Florida in January of 1984, more than seven months after its departure, where it was docked at Broward Marine for maintenance and repairs through March 12, 1984. It then left Florida for the Bahamas and returned again to Fort Lauderdale on May 15, 1984, where it underwent repair work. It left again for the Bahamas sometime in early June and thereafter returned to Fort Lauderdale on June 24, 1984. From that date, the record indicates that the "Jervet" was in several different locations within Florida until January 2, 1985. It then returned to Fort Lauderdale again on January 6, 1985, and remained until at least January 17, 1985.
On July 9, 1985, the Department assessed a use tax and penalty against United, pursuant to section 212.06(8), Florida Statutes (1983).[2] We affirm the assessment, on the authority of this court's recent decision in Department of Revenue, State of Florida, v. G.R. Swan Enterprises, Inc., 506 So.2d 455 (Fla. 1st DCA 1987), the facts of which are strikingly similar to those in the instant case. In that case, Swan, a Delaware corporation, purchased a yacht in Fort Lauderdale, Florida, allegedly for use as a live aboard vessel in the Bahamas. The sale of the yacht to Swan was exempt from sales tax, as in this case, under section 212.05(1)(a)2. The boat was removed from Florida within ten days of purchase. It then returned to Florida on March 2, 1985, for maintenance and repairs. The repairs were finished on March 22, 1985, and the boat returned to the Bahamas on May 13, 1985. A use tax and penalty were assessed against Swan pursuant to section 212.06(8), Florida Statutes, and both Swan and the Department moved for summary judgment. The trial court held for Swan, finding it to be exempt from taxation under section 212.05(1)(a)2. This court reversed the trial court's findings, and held that the use tax and penalty assessed by the Department were valid.
We agree with the holding in Swan and the Department's assertion in the instant case, that the legal benefit of the sales tax exemption provided by section 212.05(1)(a)2 inures to the dealer who sells the boat, and that this exemption is distinct from the use tax assessed against the purchaser for importing, using, and storing the boat in Florida. United fulfilled, as did Swan, the requirements for the sales tax exemption in section 212.05(1)(a)2, and successfully avoided the imposition of a penalty by not returning the boat to Florida within six months. However, "once the initial six month period expired, [United's] subsequent importation and use of the ["Jervet"] in Florida waters triggered the use tax pursuant to Section 212.06(8), Florida Statutes." 506 So.2d 458 (emphasis in original). In so holding, we specifically find incorrect the appellant's argument that section 212.05(1)(a)2 creates an implied use tax exemption for a purchaser who complies with the requirements of that *462 section. Such an interpretation of section 212.05(1)(a)2 would, as the court stated in Swan, dictate that a purchaser could never be taxed on its use of a boat in Florida subsequent to the initial six month removal, and would violate the Commerce clause of the United States Constitution. 506 So.2d at 457.
Having determined that United is not exempt from use tax pursuant to section 212.05(1)(a)2, the question remains whether the facts in this case support a finding that the "Jervet" was used in Florida for tax purposes. We find that it was. Section 212.02(8), Florida Statutes (1983) provides:
"Use" means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it does not include the sale at retail of that property in the regular course of business.
Appellant properly concedes that the "safe haven" presumption of section 212.06(8) does not apply here, since many of the "Jervet's" travels during the six months after it left Florida were to foreign ports. This court found, in Wanda Marine Corporation v. State, Department of Revenue, 305 So.2d 65 (Fla. 1st DCA 1974) that use of a boat in a foreign country, as opposed to one of the states in the United States, does not trigger the express presumption of tax exemption in 212.06(8), but raises only a rebuttable presumption that the boat was not purchased for use in this state. As in Swan, we find that the record evidence of United's having operated the "Jervet" in and around Florida after being imported for repairs, indicates "the exercise of any right or power over tangible personal property incident to the ownership thereof," constituting "use" in Florida pursuant to section 212.02(8), Florida Statutes (1983), and overcoming any rebuttable presumption that the "Jervet" was purchased for use exclusively outside the state of Florida.
Accordingly, we affirm the Department's assessment of a use tax and penalty pursuant to section 212.06(8), Florida Statutes (1983).
MILLS and JOANOS, JJ., concur.
NOTES
[1] 2. This paragraph does not apply to the sale of a boat by or through a registered dealer under this chapter to a purchaser who removes such boat from this state within 10 days after the date of purchase or, when the boat is repaired or altered, within 10 days after completion of such repairs or alterations. In no event shall the boat remain in this state more than 90 days after the date of purchase. This exemption shall not be allowed unless the seller:

a. Obtains from the purchaser within 90 days from the date of sale written proof that the purchaser licensed, registered, or documented the boat outside the state;
b. Requires the purchaser to sign an affidavit that he has read the provisions of this section; and
c. Makes the affidavit a part of his permanent record.
In the event the purchaser fails to remove the boat from this state within 10 days after purchase or, when the boat is repaired or altered, within 10 days after completion of such repairs or alterations, or permits the boat to return to this state within 6 months from the date of departure, the purchaser shall be liable for use tax on the cost price of the boat and, in addition thereto, payment of a penalty to the Department of Revenue equal to the tax payable. This penalty shall be in lieu of the penalty imposed by s. 212.12(2) and is mandatory and shall not be waived by the department.
[2] (8) Use tax will apply and be due on tangible personal property imported or caused to be imported into this state for use, consumption, distribution, or storage to be used or consumed in this state; provided, however, that it shall be presumed that tangible personal property used in another state for 6 months or longer before being imported into this state was not purchased for use in this state.