SMITH, Chief Judge.
The Department of Revenue (DOR) appeals a final summary judgment declaring its use tax assessment against Yacht Futu-ra Corporation (YFC) null and void. We affirm.
Except for the characterization of a five-day trip which will be more fully explained below, the facts of this case are not in dispute. YFC is a Delaware Corporation with its principal place of business in Cleveland, Ohio. On or about July 3, 1984, YFC purchased a 97-foot motor yacht named Futura from Broward Marine Corporation, a corporation having a boat yard in Florida. The yacht was built in Sawgatuck, Michigan, and was delivered in Milwaukee, Wisconsin. It was registered in Delaware, and its home port was designated as Wilmington, Delaware. No sales tax was paid on the purchase of the Futura.
The affidavit of Robert J. Tomsich, the President of YFC, states that when the Futura was delivered, several serious defects were discovered which Broward Marine warranted to repair. The contract required that the Futura be brought to the Florida boat yard of Broward Marine for warranty repairs that could not be accomplished in the builder’s Michigan boat yard. Broward Marine would not consent to warranty repairs at other boat yards.
The Futura was chartered to third parties in the Great Lakes and Atlantic Seaboard area for four months after its purchase before arriving in Florida on or about October 13, 1984, for warranty repairs at Broward Marine’s yard in Ft. Lauderdale.[1] While there, the vessel also underwent minor nonwarranty work in the nature of ordinary and routine maintenance. Because of crowded conditions at the boat yard, as well as manpower and supply shortages there, work on the boat was not completed until the end of December 1984. Approximately, seventy-eight days had elapsed while the boat was being repaired.
The Futura departed Ft. Lauderdale for Ocean Reef, Key Largo, Florida, on December 30, 1984, with Mr. and Mrs. Tomsich, their children and two employees of Bro-ward Marine on board, as well as the crew. The vessel docked at Ocean Reef that same day. YFC maintains that the purpose of this trip was to sea-trial the vessel, necessitating the presence of Broward Marine personnel on board. On the other hand, DOR maintains that the trip was taken over the New Year’s holiday and was instead more akin to a pleasure trip.
While docked at Ocean Reef, it was learned that the shore cord and generator were defective, and mechanics and parts *1049 were flown in by Broward Marine to effect the repairs. The Broward Marine personnel on board the vessel were flown back to Ft. Lauderdale. The vessel remained at Ocean Reef until January 3, 1985. While at Ocean Reef, one trip was taken to the Anglers’ Club (a distance of five nautical miles) on December 31; on board were the Tomsich family, their crew, the president of Broward Marine and his spouse, and the general manager of Broward Marine and his guest.
Affidavits in the record establish that boat personnel had prepared the yacht for an intended month-long trip to the Bahamas. However, because of the mechanical difficulties and because inclement weather prevented the Futura from proceeding to the Bahamas, the Futura returned to Ft. Lauderdale on January 3, 1985. On January 6,1985, it docked at Broward Marine to await completion of repairs. At this point, approximately eight-five days had elapsed since the Futura had come to Florida.
On January 5, 1985, the Department proposed to assess a use tax on the Futura, and requested that the Futura not leave its moorings in Florida. The Department’s use tax assessment of $107,204.65, plus penalty and interest issued on February 8, 1985, and became final on May 10, 1985. YFC sought cancellation of DOR’s use tax assessment and a declaratory judgment.
The trial court found as a matter of law upon these agreed and undisputed facts that the use tax, penalties, and interest were imposed without a basis in law and that the assessment was therefore null and void. We agree that the trial court was entitled to conclude that the act of sailing the Futura into Florida waters and docking it at various marinas in Florida for the purpose of effectuating extensive repairs and alterations upon it did not constitute a use or storage so as to activate Florida’s taxing statutes. See sections 212.02(7) and (8), 212.05, and 212.06, Florida Statutes (1983); see also, Department of Revenue,
State of Florida v. Continental Developers & Conversions, Inc., 506 So.2d 436 (Fla.2d DCA 1987).
The two recent decisions of this court relied upon by DOR, United Engines, Inc. v. Department of Revenue, State of Florida, 508 So.2d 459 (Fla. 1st DCA 1987), and Department of Revenue, State of Florida v. G.R. Swan Enterprises, Inc., 506 So.2d 455 (Fla. 1st DCA 1987), are inapposite as they involved the application of section 212.05(l)(a)2. This statute provides an exemption from the sales tax for boats purchased in Florida that are removed within ten days of purchase or, when the boat is repaired or altered, within ten days after completion of the repairs or alterations. Both boats in these two cases were purchased in Florida, obtained a sales tax exemption under this statute, yet returned to Florida where their owners engaged in substantial use of the boats. Although the owners intermingled this use with repair of these boats, nothing in these two decisions suggests that the mere presence in Florida for warranty repairs, without more, will subject a boat to the use tax.[2]
Even if we were to agree that the five-day. trip of the Futura to Ocean Reef should be characterized as a vacation rather than as a sea trial for the purpose of testing the seaworthiness of the vessel, we consider this a de minimis use which, standing alone, is not sufficient to impose the use tax.
AFFIRMED.
BOOTH and WENTWORTH, JJ., concur.

. DOR presumes that tangible personal property used in another state for six months or longer before being imported into this state is not purchased for use in this state.

. In Swan, this court approved DOR’s use tax on the yacht for the use and storage of the yacht for almost two months, from March 22 to May 13, 1985. Significantly, this court did not in-elude the time the yacht was in Florida for repairs (March 2 to March 22, 1985), as a basis for the imposition of the use tax.